PEOPLE v. POOLE.

(Supreme Court, Appellate Division, Second Department.  June 12, 1908.)

1. HOMICIDE—EVIDENCE—CORPUS DELICTI.

Decedent disappeared August 13th.  On September 21st the skeleton of a man was found in a thicket about a quarter of a mile from a road leading from decedent's home to a saloon, where he was last seen alive.  The position of the skeleton, condition of the clothing upon it, and the appearance of the weeds and underbrush nearby indicated that the body had been dragged to where the remains were found.  The remains were identified as those of decedent by general measurements of the skeleton, by a peculiar conformation of the skull, and by the hat, shoes, clothing, and personal effects found in the pockets.  Three holes resembling bullet holes were found in the clothing, which, when the shirt and undershirt were placed together, were found to be in apposition.  Two bullets substantially corresponding in size with the holes were found where the body had lain, and there was an injury to one of the ribs such as might have been made by a bullet.  *Held,* that the corpus delicti was sufficiently established.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 471–476.]

2. SAME—MURDER IN SECOND DEGREE—SUFFICIENCY OF EVIDENCE.

Evidence *held* sufficient to support a conviction of murder in the second degree.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 523–532.]

3. CRIMINAL LAW—MOTION FOR NEW TRIAL—NEWLY DISCOVERED EVIDENCE—SUFFICIENCY OF AFFIDAVITS.

In a murder case, the affidavit of accused on motion for a new trial on the ground of newly discovered evidence gave a different version of the occurrences of the night of the alleged crime from his testimony on the trial, both accounts being grossly improbable, and gave a reason for his false testimony on the trial which was inconsistent with his testimony as given.  Other affidavits related principally to accused's alleged good character.  The alleged newly discovered evidence related to a person who returned to Italy shortly after accused's arrest, and whom accused claimed was connected with the homicide; the claim, in view of the testimony and affidavits, being apparently an invention suggested by the discovery that such person had gone away.  *Held,* that the motion was properly overruled.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, §§ 2396–2403.]

Appeal from Trial Term.

Grover Cleveland Poole was convicted of murder in the second degree, and appeals from the judgment of conviction and from an order denying a new trial.  Affirmed.

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Charles E. Le Barbier (Frederic H. Stillwagen, on the brief), for appellant.

Franklin A. Coles, Dist. Atty., for respondents.

MILLER, J.  The defendant was convicted in the county of Nassau of the crime of murder in the second degree, and appeals from the judgment of conviction and from an order denying a motion for a new trial made on the ground of newly discovered evidence.

First. As to the judgment: James O'Hara, who resided with his family at Port Washington, in said county, disappeared on the night of August 13, 1905. On the 21st day of September, 1905, the skeleton of a man was found in a thicket fringing a piece of woods about a quarter of a mile from a road leading from said O'Hara's home to a saloon in Port Washington, where he was last seen alive. The position of the skeleton, the condition of the clothing upon it, and the appearance of the weeds and underbrush nearby indicated that the body had been dragged to where the remains were found. Said remains were sufficiently identified as those of the said O'Hara by the general measurements of the skeleton, by a peculiar conformation of the skull, by the hat, shoes, and clothing found with the remains, and by certain personal effects found in the pockets. Three holes resembling bullet holes were found in the clothing, two through that part of the shirt and undershirt which covered the right breast, and when the shirt and undershirt were placed together the holes in each were found to be in apposition. Two bullets, substantially corresponding in size with said holes, were found where the body had lain, and there was an injury to one of the ribs such as might have been made by a bullet. The corpus delicti was sufficiently established, and there is no serious contention to the contrary.

The defendant and said O'Hara, with two companions, visited said saloon on said night, and remained some time after the departure of their said companions. At about half-past 10 or 11 o'clock the two left together, and so far as the evidence discloses that was the last time the said O'Hara was seen alive; and it is undisputed that the defendant arrived at the O'Hara home, where he was then staying, alone at a late hour of the night. A witness who lived near the road leading to said home testified that during that night, after he had retired, he heard cries which sounded to him like, "Mother! Mother!" followed by pistol shots, and that the next day he saw what appeared to him to be drops of blood in the field near the thicket where the body was found. The defendant borrowed a revolver some time in July before the disappearance of said O'Hara, and after he was arrested it was found at the O'Hara home, where he had continued to live until his arrest. A daughter of said O'Hara testified that after his return late on the night of said August 13th the defendant confessed to her that he had shot her father. The foregoing, together with testimony respecting the conduct of the defendant, and statements made by him during the interval that intervened the disappearance of said O'Hara and the discovery of his remains, constituted the evidence upon which the people relied to establish the commission by the defendant of the crime charged.

The defendant in his own behalf testified that when he returned to the O'Hara home on said night the wife of O'Hara and said daughter were away; that they returned later during the night, and the daughter, exhibiting a revolver, acknowledged that she had killed her father. It would be unprofitable to analyze the testimony of the defendant and of the deceased's daughter. The judgment does not rest on the testimony of the latter. The story of either would be incredible, but for the moral depravity of both, which the testimony of each

discloses. It would also be unprofitable to discuss the evidence showing the relations of the members of the O'Hara household and their manner of life, and suggesting a possible motive for the crime. Suffice it to say that after a careful examination of the record we are satisfied that the evidence would have justified the conviction of the defendant of the crime of murder in the first degree.

We have examined all of the exceptions in the record and find none requiring discussion. The court did not, as is said, exclude evidence of threats against the deceased made by members of his family. Such evidence was admitted, but the witnesses were not allowed to characterize statements as threats without giving the statements. Nor do we find anything in the record justifying the statement made by counsel to the effect that the attitude of the trial court was hostile and prejudicial to the defendant. On the contrary, we think the record shows that the rights of the defendant were carefully guarded, and that the trial was conducted with signal ability and fairness.

Second. The motion for a new trial was properly denied, for the reasons stated in the memorandum of the learned justice who presided at the trial. The defendant made an affidavit for use on the motion, in which he gave a different version of the occurrences of said August 13th from his testimony on the trial. Both accounts given by him are grossly improbable, and the reason assigned by him for testifying falsely on the trial, to wit, that he was trying to screen the daughter of the deceased, is so inconsistent with the testimony given by him that we are at a loss to understand the attitude of counsel who presented said affidavit as a ground for granting a new trial. The other affidavits used on the motion contain very little of what can possibly be classified as newly discovered evidence. Said affidavits related principally to the alleged good character of the defendant and to matters which were practically conceded on the trial. The alleged newly discovered evidence relates to one Frank Brown, a native of Italy, who appears to have been a visitor at the O'Hara home, and who returned to Italy a short time after the defendant's arrest. There was testimony given at the trial in relation to said Frank Brown. The defendant now swears that the deceased was killed in his home by his daughter and the said Frank Brown on the night of said August 13th, and there is some evidence that soon after the arrest of the defendant the said Frank Brown left Port Washington without collecting all the wages due him, but that his son afterwards collected the sum unpaid. We are satisfied, from a careful reading of the testimony on the trial and of the affidavits used on the motion, that the discovery of the departure of said Brown suggested to the defendant the invention of the story which he now tells connecting the said Brown with the homicide. If it would be proper to grant a new trial in this case, industry without scruple would suffice to set at naught every trial, no matter how carefully conducted.

The judgment and order should be affirmed. All concur.