THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRED R. BADGER, Appellant.

Third Department, July 2, 1926.

Crimes — arson — conviction sustained· by evidence — motion under Code Crim. Proc. § 465, for new trial on ground of newly-discovered evidence properly denied.

The conviction of the defendant of the crime of arson in the second degree, based on evidence tending to show that the defendant transferred the property in question to a third person, without the payment of any consideration, under an agreement with said third person to burn the property so that the defendant could procure the insurance, is sustained by the evidence. The jury were justified in refusing to accept the defendant's version of the transaction, since it is evident that he had not testified truthfully on several points.

The court properly denied a motion for a new trial on the ground of newly-discovered evidence, which was made ten months after the conviction of the defendant, since the alleged newly-discovered evidence would not, if received, probably have changed the verdict, and, therefore, under subdivision 7 of section 465 of the Code of Criminal Procedure, it was proper to deny the motion.

APPEAL by the defendant, Fred R. Badger, from a judgment of the County Court of the county of Franklin, rendered on the 29th day of April, 1925, convicting him of the crime of arson, second degree, and also from an order entered in the office of the clerk of the county of Franklin on the 23d day of February, 1926,

denying defendant's motion for a new trial on the ground of newly-discovered evidence.

*Leary & Fullerton* [*James A. Leary* and *Walter A. Fullerton* of counsel], for the appellant.

*H. W. Main, District Attorney,* for the respondent.

COCHRANE, P. J. On June 16, 1924, the defendant conveyed to one James Cromp about two acres of land with a one and one-half story frame house thereon and took back a mortgage thereon executed by Cromp for the sum of $800. According to the evidence on the part of the defendant the property was worth from $1,000 to $1,200 and according to the evidence on the part of the prosecution it was worth about $500. There is some evidence indicating that the defendant twice unsuccessfully attempted to sell it for this latter amount. The house had been vacant for several months. It was at the time insured for $1,500. The deed to Cromp was duly recorded. The mortgage from him to defendant was not recorded. Defendant at the time of the said transaction had a notation made by the insurance agent on the said policy to the effect that the loss, if any, was to be payable to Cromp as owner and himself as mortgagee as their several interests might appear. Cromp with his family immediately moved into the house and continued to reside there until September 9, 1924. At eleven o'clock in the evening of that day he with felonious intent set fire to the house and it was destroyed. An investigation followed as a result of which Cromp confessed his guilt, was promised immunity from prosecution by the district attorney and the defendant and one Joseph Dufrane were indicted for aiding, abetting and instigating Cromp in the commission of the crime. The defendant was tried separately under said indictment, and having been convicted the judgment of conviction is in this court for review.

The defendant and said Dufrane had numerous business transactions. Defendant had a mortgage on the property where Dufrane resided and a bill of sale of the personal property thereon. Cromp testified that he met the defendant at the residence of Dufrane on Sunday, June 15, 1924, the day before the execution of the said deed and mortgage; that the corrupt bargain was then and there made whereby Cromp was to move into the house and destroy it by fire and to be paid therefor the sum of $200; that pursuant to arrangement then made with the defendant the two met at Malone on the following day, when the deed and mortgage were executed. He further testified that on several occasions between that time and September ninth defendant urged him to burn the building. Finally on September eighth, the day before the fire,

Cromp said that the defendant came to his place and told him in substance to burn the house as quickly as possible " because the insurance company was coming and they would inspect the house and condemn it." The daughter of Cromp and her husband formed part of his household and they testified that they were within hearing distance and that they heard the foregoing statement of the defendant. The testimony of these two witnesses has been accepted by the jury and there can be no question that it constitutes sufficient corroboration to satisfy the statute requiring corroboration to justify a conviction based on the testimony of an accomplice. The defendant has been a successful business man, has represented his town as supervisor for eight years and has occupied other positions of trust and confidence at the hands of his fellow-citizens. The improbability of the commission of such a crime by such a man is urged in his behalf and also the fact that his conviction has been brought about by witnesses of questionable character and that their testimony is unreasonable and in some particulars unbelievable. We are not unmindful of the force of this argument but a weak case for the prosecution sometimes is made strong by the nature of the defense and of the testimony produced by the defendant. The defendant was a witness in his own behalf and in some respects his testimony was improbable and inconsistent. In the first place he denied that he was present at the residence of Dufrane on June fifteenth, although there is considerable testimony that he was there at that time. The jury were certainly justified in finding that he was not truthful in that particular and so it is not strange that they discredited his entire testimony. He is represented as being a keen man of business and by that criterion, therefore, his conduct may be measured. His contention is that Cromp came to him at his residence in Burke on June fourteenth and wanted to buy the property, saying that Dufrane had sent him. Defendant claims that he had never seen Cromp before and knew nothing about him. Cromp admitted he could make no payment on the property and that his personal property was chatte. mortgaged. This shrewd man of business, however, vested the absolute title of the property in an irresponsible stranger whom he knew nothing about and deprived himself thus of the means of protection which men ordinarily adopt when making real estate transactions. The jury may well have wondered why he gave Cromp a deed instead of letting him have the property under some other arrangement more practical and beneficial to himself. He says that the purchase price was $1,100 and that Cromp was to cut sixty acres of hay for $300, which was to be applied on the purchase price in addition to the mortgage of $800.

He did not, however, safeguard that arrangement in any way so as to insure himself that Cromp would perform his contract. Cromp denies that he was to cut the hay or that he was to make any payment. As a matter of fact he did not cut the hay and defendant procured other parties to do so without seeing Cromp or urging him to perform this part of his agreement. He says he made several efforts to see him but failed to do so, although they were separated by only a few miles. At no time does he claim that he reproached or rebuked Cromp for his failure to perform his contract, although he says he once asked him why he did not do so. On September second he sold to Cromp a horse, wagon and harness for $75 and took back a chattel mortgage on that and other property. He did not then include the $300 which he says Cromp owed him in the chattel mortgage, nor did he endeavor to do so. Cromp is an illiterate man, unable to read or write. He says he did not know that he was receiving a deed or giving a mortgage; that he signed some paper which was not read to him; that he did not promise to pay anything for the place. It is the contention of the prosecution that he was a mere instrument in the hands of the defendant and did not realize or comprehend the transaction as indicated by the deed and mortgage. Witnesses familiar with the reputation of the defendant in the community where he resided testified that his reputation for veracity was bad and that from such reputation they would not believe him under oath. Other witnesses testified in support of his character. The mere fact that the defendant carried an insurance of $1,500 on a house which, together with the land on which it stood, he valued at $1,100 may in itself have been a suspicious circumstance in the minds of the jury. They had the advantage of seeing the witnesses, observing their manner in giving their testimony and it was within their province to draw the appropriate inference from all the evidence before them and an appellate tribunal deprived of that advantage should not lightly interfere with the verdict of a jury in a case where different inferences may properly be drawn. It is said that the amount to be realized from this wicked device was too insignificant to constitute a sufficient motive for a man of the financial standing such as the defendant, but from the testimony the jury had a right to infer that the deed to Cromp and the mortgage from him constituted merely a device to deceive others, the real purpose of which was to create a method whereby the defendant might receive all of the insurance, amounting to $1,500, excepting only the $200 which he agreed to pay Cromp.

Criticism is directed against the charge of the court to the jury. Although no exception was taken thereto we have carefully examined

the same and do not think that it was unfair to the defendant or that any error was committed to his prejudice. We have also carefully examined the rulings in the course of the trial and find none which could have prejudiced the defendant.

A motion for a new trial on the ground of newly-discovered evidence was made ten months after the conviction of defendant. This motion was heard and denied by a county judge who had succeeded to the judge before whom the case was tried. The affidavits do not show that any important evidence was omitted from the trial. A motion of this kind is made under section 465 of the Code of Criminal Procedure, which among other things provides in subdivision 7 thereof that the evidence which will justify a new trial must be " such as if before received would probably have changed the verdict." We are satisfied that none of the evidence suggested in the affidavits produced on this motion would have changed the verdict if produced at the trial. The issues were such and the evidence in respect thereto was such that the new evidence could not have had a material bearing on the questions constituting the decisive features of the case. A motion of this kind is addressed to the discretion of the court and we feel that there was no abuse of discretion in the denial of this motion.

The judgment of conviction and the order denying the motion for a new trial should both be affirmed.

Judgment of conviction and order denying motion for new trial unanimously affirmed.