THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK J. McCARTHY, SIMON A. KEARNS, FRANK J. LEIGH, WILLIAM F. MUCKLER and JOHN W. NEVILLE, Appellants.

Fourth Department, March 15, 1939.

*Burke & Desmond* [*Charles S. Desmond* of counsel; *Thomas C. Burke* with him on the brief], for the appellant McCarthy.

*Fleischmann Brothers* [*Manly Fleischmann* of counsel; *Justice Fleischmann* and *Adelbert Fleischmann* with him on the brief], for the appellants Neville, Muckler and Kearns.

*McNamara & Driscoll* [*William J. Driscoll* of counsel], for the appellant Leigh.

*Frank G. Raichle, Special Assistant District Attorney* [*James O. Moore, Jr.*, and *Aline M. Jokl* of counsel; *Leo J. Hagerty, District Attorney*], for the respondent.

TAYLOR, J.  The Annual National Convention of the Veterans of Foreign Wars was held in Buffalo, commencing Sunday, August 29, 1937, and continuing through the week.  In connection with

the convention the local veterans' post organized a membership corporation under the name " Veterans of Foreign Wars of the United States 1937 Encampment Corporation of Buffalo, Inc.," for the purpose of financing the convention. As a means to this end the corporation conducted a carnival in Centennial Park; a fee was charged for admission to the carnival grounds, where nightly entertainment was provided, consisting of fireworks displays and sham battles. The carnival opened on Thursday, August twenty-sixth and continued through Saturday of the following week; the daily attendance was between 15,000 and 30,000 persons. Preparation for the convention and the carnival was commenced in January, 1937; the corporation opened offices and contracted with James Sullivan to make all arrangements for attractions, advertising and rental of concession space; associated with Sullivan were C. William Frank, Jr., and John J. Moran. Sullivan engaged the Reuben & Cherry Shows, managed by Joseph Redding, to provide the usual carnival rides and sideshows; these attractions were confined to the southerly portion of a midway which extended from the southerly to the northerly limits of the carnival grounds; the northerly portion of the midway, for about a quarter of a mile, was mainly devoted to booths, approximately ninety in number, in which wheels of fortune were operated; many, if not all, of these wheels were so constructed that they could be controlled by the operator and stopped at any desired point. A few of the operators were connected with the Reuben & Cherry Shows; most of them, called " independent concessionaires," leased their space from Sullivan. The encampment corporation did not share in the profits from these concessions but derived its revenue from space rentals and from a percentage of the gate receipts and admission fees to the various shows and rides. During the progress of the carnival many visitors lost substantial sums of money while playing the wheels of fortune. Upon complaining to the police detectives detailed to the grounds, these victims — after being directed to Moran or Sullivan by these detectives — would have returned to them from twenty-five to fifty per cent of their losses. The wheels were operated in full view of the guardians of the law until the night of Thursday, September second, when an inspector of police came to the carnival grounds and closed all concessions where gambling devices were in operation. Thereafter a grand jury investigation resulted in the return of an indictment against the appellants and C. William Frank, Jr., and John J. Moran, charging them, in a first count, with conspiracy to obstruct justice and the due administration of the laws pertaining to gambling, in violation of subdivision 6 of section 580 of the Penal Law (a misdemeanor), in a second count with bribery in violation

of section 372 of the Penal Law (a felony), and in a third count with taking unlawful fees in violation of section 1826 of the Penal Law (a felony). The appellants were tried and all were found guilty on the conspiracy count; the appellant McCarthy, alone, was found guilty on all three counts.

The appeal is from the several judgments of conviction which were entered upon the verdict of the jury. In conjunction therewith we are called upon to review an order denying appellants' motion for a new trial upon the ground of newly-discovered evidence. From the affidavits presented to support the motion for a new trial it appears that the evidence, which was claimed to be newly discovered, bore only upon the credibility of the witness Moran, was cumulative, and related to matters which were the subject of extended inquiry upon the trial. The rule has often been stated that a new trial will not be granted where the proofs tend only to impeach or discredit a witness who was sworn upon the trial. (*People* v. *Becker*, 215 N. Y. 126, 159, 160.)

The court, therefore, on the proofs before it, properly exercised its discretion in denying the motion, and its action in that respect should be approved.

On the principal appeal the appellants urge as grounds for reversal of the judgments of conviction (1) that the verdict is against the weight of evidence, (2) that the court erroneously instructed the jury that it might find the appellants guilty of the crime of conspiracy, under the first count of the indictment, from all of the other testimony in the case, exclusive of the testimony of the accomplices Moran and Redding, (3) that the appellants were not accorded a fair and impartial trial by reason of the prejudicial conduct of the prosecuting attorney, and (4) that prejudicial error was committed by the court in various rulings on the admission and exclusion of evidence.

The first and second of these grounds may be considered together, since each involves the quantity and quality of the proofs disclosed by the record. Proof that the Penal Law provisions pertaining to gambling were openly and notoriously violated is found not only in the testimony of witnesses called by the People but also in the testimony given by each of the appellants. The pertinent provisions of the Penal Law relating to gambling are:

" § 970. * * * A person who is the owner, agent, or superintendent of a place, or of any device, or apparatus, for gambling; * * * is a common gambler, and guilty of a misdemeanor."

" § 973. * * * Any * * * individual, who keeps a * * * booth, * * * used for gambling, or for any purpose or in any manner forbidden by this article, or for making any wagers

or bets made to depend upon any lot, chance, casualty, unknown or contingent event * * * is guilty of a misdemeanor."

Section 977 authorizes the seizure of gambling implements.

Section 997 imposes upon all police officers and other peace officers the duty to inform against all persons whom they have reason to believe are offenders against the statutes prohibiting gambling and provides that any omission by such officers of their respective duties shall be punishable by a fine not exceeding $500.

The wheels of fortune which were operated in the booths along the midway fall within the statutory prohibition: " A ' device or apparatus for gambling ' is a device or apparatus designed for carrying on the actual gambling — for determining whether the player is to win or lose, like the wheel of fortune in its manifold modifications, and contrivances of that sort." (*People* v. *Engeman*, 129 App. Div. 462; affd., 195 N. Y. 591.)

Notwithstanding the clear and positive command of the statute that police officers enforce the laws prohibiting gambling, the jury had before it evidence tending to establish that McCarthy, as assistant chief of detectives, assigned himself and the other appellants to the duty of policing the section of the midway on which the gambling devices were located; that they made no arrests on charges relating to gambling, seized none of the gambling devices and, excepting Leigh, referred complainants to Moran, as the person in charge of activities in that section of the midway, who would adjust their losses; that Leigh saw the wheels of fortune in operation, knew that complaints of losses had been made to at least one uniformed police officer, and was with McCarthy on an occasion when McCarthy ordered this officer to leave the carnival grounds because he had threatened to arrest the operators of these gambling devices if he received any more complaints.

The proofs thus far considered are not dependent for support upon the testimony of the accomplices, Moran and Redding. Having in mind the statutory provisions in respect to gambling, the evidence — exclusive of the testimony of Moran and Redding — amply supports the finding of the jury that the appellants were guilty of the crime of conspiracy to obstruct justice and the due administration of the law pertaining to gambling.

In reviewing a judgment convicting several defendants of the crime of conspiracy — in violation of the same Penal Law provisions here involved — the court, in *People* v. *Sweeney* (213 N. Y. 37), said: " Such a conspiracy * * * can be inferred from conduct which discloses a concert of action and a common design and intent to accomplish the unlawful purpose."

In Wharton's Criminal Law (Vol. 2 [12th ed.], § 1667) the rule is stated as follows: " The actual fact of conspiring may be inferred, as

has been said, from circumstances, and the concurring conduct of the defendants need not be directly proved. Any joint action on a material point, or collocation of independent but co-operative acts, by persons closely associated with each other, is held to be sufficient to enable the jury to infer concurrence of sentiment; and one competent witness will suffice to prove the co-operation of any individual conspirator. If, therefore, it appear that two or more persons, acting in concert, are apparently pursuing the same object, often by the same means, one performing part of an act, and the other completing it, for the attainment of the object, the jury may draw the conclusion that there is a conspiracy."

Since the proofs, aside from the testimony of the accomplices Moran and Redding, made out a *prima facie* case on the conspiracy charge, the conclusion necessarily follows that the court properly instructed the jury that it might find the appellants guilty, under the first count of the indictment, from all of the other testimony in the case, without including that of Moran and Redding. Similar instructions were held to be proper in *People* v. *Lytton* (257 N. Y. 310, 316). In a criminal case the court is under a duty to " ' present to the jury the case on trial in all the phases in which the jury ought to consider it ' " and " generally to analyze the evidence in the case so as to present to the jury fairly the conflicting claims of the People and the defendant " (*People* v. *Montesanto*, 236 N. Y. 396, 406, 407), and fair comments upon the testimony, so long as all questions of fact are left to the jury under proper instructions, do not constitute legal error. (*Sindram* v. *People*, 88 N. Y. 196, 202.)

The evidence bearing upon the question of McCarthy's guilt on the felony counts needs no extended discussion; it is sufficient to point out that both Moran and Redding testified that McCarthy demanded and received a bribe for permitting the gambling concessions to operate. This testimony, although given by accomplices, is sufficiently corroborated by the other evidence in the case to present a question of fact for the jury. (See *People* v. *Swersky*, 216 N. Y. 471, 480.)

Appellants' further contention that the prosecutor's conduct was so prejudicial as to require a new trial in the interests of justice, cannot be sustained. A careful examination of the record reveals but two instances in which the prosecutor appears to have exceeded the bounds of proper cross-examination, both instances relating to questions which the prosecutor had asked a witness who testified as to the good reputation of the appellant McCarthy. Objections to these questions were sustained; the questions were not answered and counsel made no motion for a mistrial. The trial continued eighteen days; all of the appellants were represented by able and

aggressive counsel; the trial judge was eminently fair to both prosecution and defense and submitted the issues to the jury in a charge that was impartial and free from error. Under such circumstances a ruling that these two instances — and others quite insignificant — so prejudiced the minds of the jurors against McCarthy or the other appellants as to justify reversal of the judgments would not be in accord with the provisions of section 542 of the Code of Criminal Procedure.

The remaining grounds which the appellants urge for reversal have been considered and no errors affecting the substantial rights of the parties have been found. Certain evidence, which was relevant and competent on certain issues only, was received generally. This was not error, for it was open to counsel to ask the court to confine the consideration of such evidence to the issues in relation to which the evidence was relevant.

The several judgments of conviction and the order should be affirmed.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, TAYLOR and DOWLING, JJ.

Judgments of conviction and order affirmed.