Lyman H. Smith, J.
On November 16,1972, a trial jury found the defendant guilty of the first, third and fifth counts of Indictment No. 34766/72 (bribe receiving, Penal Law, § 200.10; official misconduct, Penal Law, § 195.00; and promoting prison contraband in the second degree, Penal Law, § 205.20). (See People v. Bartholomew, 71 Misc 2d 876.)
On January 15, 1973, defendant moved to set aside the jury verdict and for a new trial on grounds of newly discovered evidence pursuant to subdivision 3 of CPL 330.30. That motion was denied without prejudice, and with leave to renew, by decision of this court dated and entered January 22,1973. Reference is hereby made to that decision for a review of the pertinent factual background essential to an ultimate determination of the issues to be decided herein. Reference is also made to a decision of this court filed and entered sub nom. People v. Dodge (73 Misc 2d 80).
*542 Exercising the leave of the court, defendant again moves to set aside the trial verdict and for a new trial.
Specifically, the defendant now moves to set aside the verdict on two grounds: first, the defendant contends that “ newly discovered evidence ”, viz., a 1953 anamnesis and purported psychiatric report concerning one Charles Di Umberto ( a principal trial witness for the People) (see 71 Misc 2d 876) has been uncovered since the trial, which could not have been discovered by the defendant at the trial, even with due diligence on his part, and that such evidence is of sufficient substance and character to create á probability that, had this “ evidence” been received upon the trial, the verdict would have been more favorable to the defendant; secondly, he contends that the prosecution concealed this “ evidence ”, and violated principles laid down in Brady v. Maryland (373 U. S. 83).
As to the defendant’s first contention, a careful review of the defendant’s application compels two conclusions: (1) that the moving papers themselves fail to comply with the specific provisions of CPL 330.40 (subd. 2, par. [ó], els. [i], [ii]); and (2) that, in any event, the proffered psychiatric records will not satisfy the definitive standards and requirements for ‘ ‘ newly discovered evidence ”, contemplated by the statutory and decisional law.
The papers in support of the defendant’s application consist of an affidavit by defense counsel in which he refers to the “ newly discovered evidence” as being the afore-mentioned psychiatric reports of the People’s chief witness, Charles Di Umberto. Nowhere in the affidavit, nor in his moving papers, does defense counsel indicate the source of his knowledge as to the contents of these psychiatric reports. He alleges, without supporting evidence, that these psychiatric reports were prepared by doctors from the “ Department of Mental Hygiene, Ossining Correctional Facility ”. He further alleges that these reports carry a diagnosis of the witness, Charles Di Umberto, as a “pathological liar”, a “psychopathic personality” and one whose ‘1 statements must be discounted. ’ ’ He then concludes, without corroborative proof, that the District Attorney knew of the witness’ medical and psychiatric history and failed to produce it. Nothing is offered, .other than these conclusory allegations, to support the claimed prior knowledge of the District Attorney. Defendant’s counsel in his affidavit apparently quotes, at length, and verbatim, from reports from Sing Sing Prison and Dannemora State Hospital, without any allegations as to how he obtained knowledge of what is purportedly contained in *543 these reports. Nowhere in his affidavit, does counsel even allege that he viewed these reports. In passing, it must be noted that these reports are privileged as a matter of law and, thereby, fall within the statutory protection of the doctor-patient privilege conferred by CPLR 4504. (Wilson v. State of New York, 36 A D 2d 559; Boykin v. State of New York, 13 Misc 2d 1037, affd. 7 A D 2d 819; see, also, decision of this court People v. Dodge, 73 Misc 2d 80, supra.)
This is not evidence in chief.. It is hearsay. It is conclusory. It is remote. It is privileged. The CPL, which codified the case law with respect to procedure for making a motion to set aside a verdict, has not been complied with in the case at bar. The papers should contain sworn allegations of fact based upon personal knowledge, or upon information and belief, provided that, if upon information and belief, the source of the information and the grounds for such belief must be set forth. (CPL 330.40, subd. 2, par. [a].) The moving papers fail to meet this standard. There is no disclosure as to whether the allegations are on personal knowledge or on information and belief, nor is there any revelation as to the basis of the affiant’s belief. CPL 330.40 (subd. 2, par. [e], els. [i] and [ii]) specifically authorizes the court in these circumstances to deny the motion. Therefore, this court finds, de facto and de jure, that the moving papers fail to comply with the provisions of CPL 330.40 (subd. 2, par. [a]), and thus denies the motion pursuant to CPL 330.40 (subd. 2, par. [e], els. [i], [ii]).
Since, however, precise questions concerning the use upon trial of a-witness’ prior prison records have now been raised, apparently for the first time in our State, the merits of such issues, particularly upon a post-trial motion to set aside a jury verdict (as in the instant case) will warrant the further attention of the court.
Subdivision 3 of CPL 330.30 provides that the ‘ ‘ new evidence ” must be of “ such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant.” (People v. Gambacorta, 197 N. Y. 181; People v. Gordon, 142 Misc. 25; People v. Badger, 217 App. Div. 424, affd. 243 N. Y. 632; People v. Devine, 97 Misc. 205; People v. Henry, 127 App. Div. 489; People v. Poole, 127 App. Div. 122, affd. 199 N. Y. 542; People v. Kehler, 28 N. Y. S. 2d 71; People v. Luciano, 164 Misc. 167, affd. 251 App. Div. 887, app. dsmd. in part 275 N. Y. 547, affd. 277 N. Y. 348, rearg. den. 278 N. Y. 624; People v. Giordano, 144 Misc. 108; People v. Enlind, 120 Misc. 42, app. dsmd. 208 App. Div. 723, affd. 214 App. Div. 277.)
*544 Subdivision 3 of GPL 330.30 further requires the “ evidence ” must be of such a nature that it could not have been discovered before the. trial. (People v. Galler, 37 N. Y. S. 2d 482, affd. 266 App. Div. 675, mot. for lv. to rearg. den. 266 App Div. 733; see, also, United States ex rel. Fein v. Deegan, 410 F. 2d 13, cert. den. 395 U. S. 935.) That this “ evidence ” was not discovered pretrial in this case hardly sustains the conclusion that it could not have been discovered. In this regard, defendant has failed in this motion to carry' his burden of proof.
In order to assess the statutory validity of defendant’s motion, we must now look to the prospective uses to which this * ‘ new, evidence ” could have been used upon the former trial, or might be used upon a new trial.
From his application it is apparent the defendant’s primary purpose is to use the witness’ psychiatric reports to attack the credibility of the witness. Laying aside the issue of the privileged nature of these reports, it is clear that the character of this “evidence”, standing alone, as a hearsay diagnostic report, will dictate that it is not admissible in evidence. Restricted to its use on cross-examination, the defendant will then be foreclosed from offering extrinsic evidence to contradict any answer the defendant- might give while on the stand under cross-examination. In other words, the defense counsel could not introduce the psychiatric reports nor could he call doctors to the stand to testify on the question of the witness’ credibility. (People v. Duncan, 13 N Y 2d 37; People v. Williams, 6 N Y 2d 18; People v. McCormick, 303 N. Y. 403; People v. Perry, 277 N. Y. 460; People v. De Garmo, 179 N. Y. 130.) This would not, of course, prohibit the cross-examiner from continuing cross-examination on the subject in anticipation that the witness might change bis testimony. (People v. Sorge, 301 N. Y. 198.)
The decisional law in this State generally indicates that a new trial based on newly discovered evidence should not be granted if the evidence is merely of an impeaching nature. (People v. Williams, 35 A D 2d 1023; People v. Bolster, 24 A D 2d 774; People v. Shepard, 142 N. Y. S. 2d 882; People v. Skeete, 205 Misc. 1118; People v. McCarthy, 256 App. Div. 522, affd. 280 N. Y. 763; cf. People v. Rensing, 14 N Y 2d 210.) (See, also, United States ex rel. Fein v. Deegan, 410 F. 2d 13, supra. The Federal authorities follow the same rule.) In this regard, it must be emphasized that the witness’ credibility was under extended attack during the trial by a continuous and repetitious review on cross-examination of his extensive criminal record, including, but not limited to his hospitalizgtiqn at the Darni^mora *545 State Hospital in 1952 and 1953. It is difficult to see how any witness’ credibility could have come under greater attack, and apparently survive, as in the case at bar. Accordingly, any additional attack on his credibility in connection with a mental state that the witness may have been in some 20 years ago would not only be remote but, at best, would be cumulative and hardly sufficient to warrant a new trial. (People v. McCarthy, supra.) There is no allegation, nor any evidence, nor any indication in the record or in this motion, that the witness was actually insane at the time he testified, which would bring this case within the reasoning of People v. Reusing (supra). Similarly, the papers are devoid of any allegation, and the record does not disclose, any evidence of insanity at the time of the criminal occurrence. (People v. Webster, 139 N. Y. 73.)
Based on the foregoing, even if the purported “ new evidence ” had been used on cross-examination of the witness, the likelihood that there would have been a verdict more favorable to the defendant does not exist.
The other requirement of subdivision 3 of OPL 330.30 is that the evidence be of such character that the defendant, with due diligence, could not have explored it on the trial. As above indicated, the record discloses that defendant’s counsel, on cross-examination of this witness, explored the witness’ stay at Dannemora State Hospital, including four separate incidents which took place while the witness was confined to Dannemora State Hospital, and the medical reasons for the witness’ confinement to that institution. To further diminish the value of this 11 new evidence ”, it appears that the witness’ psychiatric history, as outlined in the clinical summary quoted most extensively (source unknown) is extremely remote in time. It appears that the witness’ stay at Dannemora took place in the very early 1950’s, particularly 1952-1953. The author of this clinical summary is not named in the moving papers. The moving papers have failed in any way to represent the witness’ mental condition of 1953 to be his mental condition at the time he testified in the case at bar.
In People v. Salemi (309 N. Y. 208, 216), the court set forth the following criteria for determining sufficiency of newly discovered evidence:
(1) It must be of such a nature as would possibly change the verdict should a new trial be granted. As previously discussed, the evidentiary material now proffered as “ new evidence ” would be unlikely to change the result.
(2) It must have been discovered since the previous trial. The motion at bar fails to meet this test in that counsel was aware *546 of the witness’ stay in Dannemora and the reason for his presence in Dannemora State Hospital. This could have been explored at the trial.
(3) It must be of such a nature that it could, not have been discovered before the trial by the exercise of due diligence. Whether the defendant’s application meets this criterion is highly questionable, since, even though he was not formally apprised (pretrial) of the “ John Doe ” in the indictment, it was common knowledge that “ John Doe ” was in fact the witness, Charles Di Umberto. This information had been widely disseminated (pretrial) through the various news media. “ John Doe’s” identity was oommendably revealed by the District Attorney upon the voir dire and in his opening. Armed with this information, there was nothing to prevent counsel from investigating Mr. Di Umberto’s background if he wished to cross-examine, at greater length, on the subject of credibility.
(4) It must be material to the issue. In the case at bar, the issue was the guilt or innocence of the defendant; the credibility of the witness was merely a collateral issue. On this point, too, the application fails.
(5) It must not be cumulative to the former issue. In this case, not only was it a collateral issue but the ‘ ‘ evidence ’ ’ offered here would be cumulative, since the witness Di Umberto’s credibility was, as noted above, under continuous and extensive attack.
(6) It must not be impeaching or contradictory of former evidence. In the case at bar, that is exactly what the proffered evidence consists of.
Defendant’s application has therefore failed every criterion set forth by the Court of Appeals for determining the sufficiency of “ newly discovered evidence”.
We turn briefly to defendant’s argument that the District Attorney withheld, concealed, and suppressed material evidence. Assuming, arguendo, that the evidence was material, the supporting affidavit offers no more than a bare speculative conclusion that the District .Attorney was aware or “ should have been aware ” of the existence of this material.
This court finds no justification, however, for presuming that the Nassau District ^Attorney would have knowledge of the alleged medical reports, on a People’s witness; dating back 20 years, in an institution outside this jurisdiction and prepared by unnamed personnel. Laying aside again the fact that this knowledge could not be imputed to the District Attorney of Nassau County, we review the question of whether such “ new evidence ” or material comes within the scope of Brady v. Maryland (373 *547 U. S. 83). In ether words, is this the kind of material which Brady dealt with in criticizing the withholding by the prosecution of evidence? Brady v. Maryland held (p. 87):
“We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violate [d] due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. ” (emphasis supplied).
The prosecution may not withhold “ evidence on demand, of an accused which, if made available, would tend to exculpate him or reduce the penalty ”.
Clearly, cumulative evidence concerning the credibility of a witness for the prosecution does not meet the tests spelled out in Brady. In a more recent case, the United States Supreme Court delineated some of the criteria to he considered in the area of consideration of material evidence. (Moore v. Illinois, 408 U. S. 786.) The court there held that the following considerations should be weighed:
(1) Was the evidence suppressed after request by defendant?
(2) Was the evidence of a favorable character to the defense?
(3) What materiality would such evidence have on the question of guilt or punishment?
The court specifically held that the prosecution does not have to make a detailed accounting of the entire police investigation of the defendant to the defendant.
In two .recent cases of the United States .Supreme Court, a pattern has developed in the application of the Brady rule. The first case was Giglio v. United States (405 U. S. 150) and the second case was Moore v. Illinois (408 U. S. 786, supra). In Giglio a promise of nonprosecution was made to a government witness. The prosecutor who tried the case was not aware of the promise and failed to advise the defense counsel of the promise. Although there was no bad faith, the court held that the defendant was entitled to a new trial. In Moore, however, where a new trial was denied, the prosecutor failed to reveal evidence that bore on an eyewitness’ attribution to Moore of someone else’s. nickname. This evidence, Moore claimed, suggested that someone named “Slick”, whose appearance was different from Moore, had actually committed the crime. There were, however, other eyewitnesses who identified Moore as the killer. What .seems to have developed from these two cases is that a demand by the defendant is required when the materiality •is marginal, whereas when the item withheld is important evidence (like a promise of immunity) there need be no demand on the part of the defense counsel.
*548 In the case at bar, there is no record of any specific demand by defense counsel Defendant’s midtrial subpoena duces tecum directed to the Ossining Correctional Facility (Nov. 7, 1972) sought only “ books and records of inmate Charles Di Umberto including records of phone calls, visits and other files that are kept specifically on Charles Di Umberto.” (See.73 Mise 2d 80.) With reference to the requirement of “ due diligence ”, it may be noted that the indictment of the defendant was handed up to the court on June 7,1972, some five months prior to the commencement of the trial, and that defendant has been continuously represented by present counsel prior to that date.
This court is of the opinion that the failure of the defense counsel to have this material was not a deliberate ploy by the prosecution. There was no request for specific medical and psychiatric material by the defense. Further, the defense, at best, could have put this evidence to only an insignificant use. (United States ex rel. Fein v. Deegan, 298 F. Supp. 359, affd. 410 F. 2d 13 — reported in New York sub nom. People v. Fein, 24 A D 2d 32, affd. 18 N Y 2d 162.) Therefore, this court is of the firm opinion that there has been no violation of the Brady rules.
This court finds that the papers here have failed to meet the requirements of CPL 330.40. In spite of this, we have considered the motion on its merits and find, in summary, as follows:
(1) that the proffered material is impeaching evidence of a truly collateral character;
(2) that it is remote;
(3) that it is cumulative;
(4) that it dobs not square with the definition of “newly discovered evidence ” as required by statute (CPL 330.30, subd. 3), and
(5) that there has been no violation of the Brady rule (supra).
For the foregoing reasons, the court is compelled to conclude that the proffered “ new evidbnee ” is of insufficient weight to sustain an order setting aside the verdict of the previous trial.
Accordingly, the motion is denied in all respects.
So ordered.