**Dollree MAPP, Petitioner,**

v.

**Frances CLEMENT, Superintendent of Bedford Hills Correctional Institution for Women, and Louis J. Lefkowitz, Attorney General, State of New York, Respondents.**

**No. 77 Civ. 3090.**

United States District Court,
S. D. New York.

March 14, 1978.

506

Eleanor Jackson Piel, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen., New York City, for respondents; by John M. Farrar, Gale D. Berg, Asst. Attys. Gen., New York

City, Gerald J. Ryan, Spec. Asst. Atty. Gen., Buffalo, N. Y., of counsel.

## OPINION.AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Petitioner Dollree Mapp seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 claiming that certain of her constitutional rights were denied in her trial in State court. The main thrust of her claim is that she and her codefendant, Alan Lyons, were represented by the same law firm, notwithstanding the fact that a conflict of interest allegedly existed between the two defendants. She also appears to be raising two other claims presented in her *coram nobis* motion before the State court: (1) that she was denied due process of law because of the deliberate falsification of evidence by corrupt police officers; and (2) that newly discovered evidence warranted a new trial. Since I believed that her latter claims were linked to her claim of conflict of interest, and since, in any event that was the sole claim raising issues warranting a hearing, I ordered that a hearing be held on the conflict question. That hearing took place on January 4 and 6, 1978, after which date the parties submitted post-trial memoranda. The following shall constitute my findings of fact and conclusions of law.

Dollree Mapp and Alan Lyons were arrested on February 18, 1970 following the discovery of heroin and other narcotic drugs in an apartment allegedly used to package narcotics. Rent receipts linking Ms. Mapp to that apartment were found at her own premises at the time of the arrest.[1] Petitioner and Lyons were convicted in New York State Supreme Court of possession of narcotics and sentenced on May 2, 1973 to twenty years to life imprisonment.

Thereafter, in a *coram nobis* proceeding, petitioner raised the issues presently before me. Her petition was dismissed by the New York Supreme Court and permission to appeal was denied by the Appellate Division of the Second Department after consideration of her claims.

Ms. Mapp was tried twice on the charges arising from her arrest in 1970. At the first trial, she and Mr. Lyons were represented by unaffiliated counsel. Both defendants took the stand in their own defense and both were convicted. Ms. Mapp engaged Nancy Rosner to handle the appeal of their conviction and a reversal was obtained based upon improper cross-examination, 39 A.D.2d 968, 333 N.Y.S.2d 539.

Ms. Mapp then contacted Mr. Feldman of the firm of Goldberger, Asness, Feldman and Braitbart to represent her at retrial. It was agreed that Mr. Goldberger would represent Ms. Mapp and Mr. Asness would represent Mr. Lyons.

The trial court conducted two colloquies on the record concerning the conflict of interest question. The first, on November 20, 1972, went as follows:

THE COURT: In the meantime I'd like to have it stated for the record, in view of the information that's before me, that you, Mr. Goldberger and Mr. Asness are associates.

MR. GOLDBERGER: Yes, we are.

MR. ASNESS: Yes, we are.

THE COURT: In practice of law. And that having come to my attention, I call to the attention of the defendants Dollree Mapp and Alan Lyons that you are represented, both, by two members of the same firm in effect.

Now I don't want the record later on to indicate that you have an objection, being represented by people who are associated, and say later on that there was a conflict of interest as far as each one of you is concerned individually in connection with such representation.

Now are you, Dollree Mapp, satisfied to proceed with your lawyer Mr. Goldberger,

1. These rent receipts and the seized heroin were the subject of a previous habeas corpus petition predicated on a search and seizure that were allegedly illegal because of an invalid search warrant and errors in identification of petitioner. *Mapp v. Warden,* 531 F.2d 1167 (2d Cir. 1976), *cert. denied,* 429 U.S. 982, 97 S.Ct. 498, 50 L.Ed.2d 592 (1977). The Second Circuit affirmed the district court's dismissal of this petition.

knowing that he also is associated with Mr. Asness who represents the defendant Alan Lyons?

MISS MAPP: I am.

THE COURT: You have no question about any conflict of interest being involved here?

MISS MAPP: Indeed not.

THE COURT: And you will not raise that issue?

MISS MAPP: No.

THE COURT: Now you, Mr. Lyons; did you hear what I asked Dollree Mapp?

MR. LYONS: Yes.

THE COURT: And you are represented by Mr. Asness?

MR. LYONS: Yes.

THE COURT: And do you have any reason why you want—any reason you wish to state for the record now that you object to such representation because it may be a conflict of interest?

MR. LYONS: Well, this is something I would have to discuss with my attorney right now, because something very important has come up and I'd like to speak to him.

THE COURT: Second call.

MR. ASNESS: Okay, Your Honor; let me go in.

THE CLERK: Page three, number two; 717–70, Dollree Mapp. Paul A. Goldberger. Alan Lyons. Barry Asness.

2. The colloquy went as follows:
   COURT CLERK: Page 4, number 1, 717 of '70, People against Dollree Mapp, by Paul Goldberger. Alan Lyons by Barry Asness.
   (Counsel and defendants present)
   COURT CLERK: Do you want the jury in?
   THE COURT: Just a moment.
   MR. GOLDBERGER, you represent—state your representation for the record.
   MR. GOLDBERGER: Yes. Paul A. Goldberger, 401 Broadway, New York, New York, for Dollree Mapp.
   THE COURT: And you, sir.
   MR. ASNESS: Barry Asness, 401 Broadway, New York, New York, for Alan Lyons.
   THE COURT: I think we put it on the record previously. We will do it again.
   I understand you are law partners or associates.

THE COURT: We were at the point where I asked you, Mr. Lyons, whether you had any objection to representation by Mr. Asness, knowing that he is associated with Mr. Goldberger.

MR. LYONS: No.

THE COURT: And I asked you whether you thought there might be a conflict of interest and if there were such a conflict of interest that you would raise that issue now or at some future time.

MR. LYONS: No.

THE COURT: You're satisfied to be represented by Mr. Asness knowing all that?

MR. LYONS: Yes.

THE COURT: Now gentlemen, as I said, I had some motions pending. I'll pass this until two o'clock to afford you the opportunity—

MR. GOLDBERGER: May we approach the bench just for one second, Judge?

THE COURT: Yes.

(Whereupon there was a discussion at the bench off the record, after which, the following occurred:)

THE COURT: Passed until 3 p. m. Bail continued.

\*    \*    \*    \*    \*    \*

On January 19, 1973, the Court again inquired whether the codefendants objected to being represented by two members of the same law firm. Each defendant answered in the negative.[2]

   MR. ASNESS: That's right.
   MR. GOLDBERGER: That's correct, your Honor.
   THE COURT: And I ask the question before of the defendant Dollree Mapp and Alan Lyons.
   Do you object to individual representation by two men of the same law firm?
   DEFENDANT MAPP: I do not object.
   THE COURT: You?
   DEFENDANT LYONS: No.
   THE COURT: Both sides ready to proceed?
   MR. ROBINSON: People are ready.
   THE COURT: Any applications before I bring in the jury?
   MR. GOLDBERGER: Only the subpoenas which your Honor has before you.
   THE COURT: I have it.
   MR. GOLDBERGER: Fine.

Petitioner now claims that the Judge's questions with regard to the potential conflict were inadequate to apprise her of her rights. She asserts that although she denied the existence of a conflict she did not understand what her rights actually were and that her attorney never explained the conflict issue to her other than to tell her it "was just a formality that judges have to ask" and "nothing to worry about" (H. 37).[3]

When a question of conflict of interest because of joint representation is raised, a reviewing court must decide whether the petitioner was prejudiced by the joint representation and whether he or she consented to it. *Kaplan v. Bombard*, 573 F.2d 708 at 712 (2d Cir. 1978). "The mere representation of two or more defendants by a single attorney does not automatically give rise to a constitutional deprivation of counsel." *United States v. Carrigan*, 543 F.2d 1053, 1055 (2d Cir. 1976). There must be a showing of "some specific instance of prejudice, some real conflict of interest, resulting from the joint representation." *Id.*

In the instant case petitioner refers to two instances of prejudice. First, she asserts that Alan Lyons was the culpable party; that he wanted to plead guilty from the inception of the trial and that he was prevented from doing so by attorneys who were seeking to benefit Lyons by Mapp's lack of culpability. Lyons was called to testify at the hearing before me and did state that he had wished to plead guilty in State court. (H. 68–69). His testimony, however, also was that the District Attorney of Queens County was unwilling to accept a plea to a lesser charge. On his lawyer's advice he chose not to plead to the full indictment but rather to go to trial and take his chance with a jury. Petitioner's

suggestion that "independent" counsel might have allowed Lyons to plead guilty is sheer speculation. It is just as likely that such counsel might have advised Lyons to go to trial—indeed, if Mapp's innocence was as clear as she asserts, independent counsel for Lyons would have undoubtedly seen the benefit to be gained from sharing a defense table with her and might well have gone to trial. It is also likely that such independent counsel might have tried to depict Ms. Mapp as the mastermind of the criminal activity—her prior experience with legal proceedings is well known,[4] and she is an educated woman with apparent business acumen.[5] Whatever might have occurred, however, mere speculation is not a sufficient showing of prejudice to merit habeas corpus relief. *United States v. Wisniewski*, 478 F.2d 274 (2d Cir. 1973).

Ms. Mapp also points to the summations of counsel to support her claim of prejudice. She argues that her own attorney, motivated by a conflict of interest avoided arguing that Lyons alone was guilty of possession of heroin. However, the fact that Mr. Goldberger did not use his summation to suggest Lyons' guilt does not demonstrate a conflict. Nor does the fact that Mr. Goldberger at one point in his summation mentioned an inconsistency in a police officer's statement that might have benefited Lyons indicate that Ms. Mapp's attorney had divided loyalties. Indeed, after carefully reviewing the entire State record including the summation on behalf of petitioner, I must remark that Mr. Goldberger demonstrated a creditable effort to obtain an acquittal in the face of overwhelming evidence of Ms. Mapp's guilt. I simply find nothing in it that even hints at a conflict. Additionally, I can give no weight to the "cryptic note" found among Mr.

THE COURT: We agreed that this matter will take three, four weeks, a projection.
MR. GOLDBERGER: Yes.
THE COURT: And I'll inquire of the jurors with respect to that.

3. The letter "H." followed by a number refers to the pages of the transcript of the hearing before me.

4. *See, Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1960).

5. Ms. Mapp has apparently owned on various occasions, two businesses and an apartment house. She has also managed the businesses and used accountants and lawyers in connection with all her ventures. (H. at 45–48)

Goldberger's summation notes which read "Stay away from areas where he would get hurt." (Exhibit 4). As petitioner's counsel apparently concedes, since she has herself characterized the note as cryptic, this note is ambiguous. It may have any of a number of meanings, none of which were explored at the hearing where it was admitted as part of a mass exhibit containing many notes.

■ Unhappiness with the outcome of a trial clearly does not warrant a subsequent attack on the adequacy of representation. Since no prejudice was shown, petitioner's conflict claim is without merit and my inquiry might end here. *Kaplan v. Bombard, supra*, 573 F.2d at 713, n.6. However, since petitioner has vigorously contested the adequacy of the trial court's inquiry as to the potential conflict, I take this opportunity to remark that, under the circumstances of this case, where petitioner, an educated and intelligent woman, both selected and paid for the counsel who represented her and her codefendant, I believe she knowledgeably agreed to the joint representation. While it may be true that the trial court did not conduct the searching inquiry suggested by *United States v. Carrigan, supra*, he twice alerted petitioner to the potential conflict arising from joint representation and on both occasions she indicated that she had no objections to having two partners from the same law firm represent both her and her codefendant. Ms. Mapp is an intelligent woman who is no stranger to legal proceedings and the appellate process. Indeed, it appears that she in no small degree participated in the conduct of her own appeal.[6] If she perceived a problem, I am confident she would not have been satisfied with the cursory explanation she claims to have received from her attorney. Rather, I find that after the issue was raised and explained, she made the knowledgeable decision to continue with the attorneys she had chosen.

■ Petitioner has raised two other issues on this petition. The first is that she was denied due process because corrupt police officers falsified evidence against her at her trial. In support of this falsification claim she directs me to affidavits attesting to the fact that she was not in New York on the date when Detective Bergersen of the Special Investigations Unit Narcotics Squad swore that he followed petitioner and Lyons to the premises where the drugs were found and heard her refer to "bagging up shit." This evidence, which goes to the credibility of the officer's testimony was clearly available to petitioner at trial and she has failed to explain why it was not presented therein. Similarly, Alan Lyons' affidavit that the rent receipts were not picked up at Mapp's premises goes merely to the credibility of Officer Wilson who testified to finding them in her home. Accordingly, it is not properly before me on this *habeas corpus* petition. *See generally, Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *U. S. A. ex rel. Cole v. LaVallee*, 376 F.Supp. 6 (S.D.N.Y.1974); *Concepcion Diaz v. Morales Bergeat*, 409 F.Supp. 749 (D.P.R. 1975); *Smith v. Peyton*, 280 F.Supp. 669 (W.D.Va.1968).

■ Petitioner also urges that she was denied access to certain personnel records of police officers. It appears from the record, however, that police files were made available to defense counsel after redaction by the court. (TR. 266–84) Any dissatisfaction with the trial court's evidentiary rulings were matters for direct appeal and may not be raised in a habeas corpus petition. *See United States ex rel. Hardy v. McMann*, 292 F.Supp. 191 (S.D.N.Y.1968).

■ Petitioner finally urges that certain newly discovered evidence warrants a new trial. The evidence includes an affidavit of one Paula Kay Gupton, who attested that she and not petitioner had paid the rent on the apartment where heroin was found. This evidence calls into question the testimony of one Mrs. Weiss who identified

---

6.  Ms. Mapp made suggestions which were incorporated into her brief on direct appeal from her conviction and urged her counsel to press an appeal based upon the insufficiency of evidence against her. Exhibit C, Petition for Habeas Corpus.

petitioner as the person who had paid the rent. However, newly discovered evidence only warrants habeas corpus relief where it bears on "the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state petitioner is not a ground for relief on federal habeas corpus." *Townsend v. Sain, supra*, 372 U.S. at 317, 83 S.Ct. at 759.

Also allegedly newly discovered are the alibi affidavits placing petitioner in Chicago on the date she was supposed to have paid the rent. Not only does this evidence fail to meet the standards set forth in *Townsend v. Sain, supra*, it can hardly be considered newly discovered. Presumably petitioner knew her whereabouts on the date in question at the time of trial. Her failure to present her alibi at that time does not entitle her to recast it as newly discovered evidence in her habeas corpus petition.

■ Further newly discovered evidence is the affidavit of James Rich who has attested to telling Detective Bergersen that he had bought drugs from Lyons and used them with Lyons. This in no way suggests that he was the confidential informant who supplied detailed information to Bergersen and whose information was subsequently found to be reliable by the Court of Appeals, *Mapp v. Warden*, 531 F.2d 1167, 1170–71 (2d Cir. 1976). Moreover, since its value is in the nature of impeachment only it is not a ground for habeas corpus relief. *Townsend v. Sain, supra.*

■ Finally petitioner urges that the subsequent conviction of Bergersen at a departmental hearing warrants a new trial. The mere fact of his later conviction, of course, does not mean that he was dishonest at the time of petitioner's trial and accordingly I find this branch of petitioner's application no more compelling than her other claims.

For the foregoing reasons the application for a writ of habeas corpus is denied.

IT IS SO ORDERED.