Robert WHITE, Petitioner,

v.

Everett JONES, Superintendent, Great Meadow Correctional Facility, Respondent.

No. 82 Civ. 4207 (JES).

United States District Court, S.D. New York.

June 4, 1986.

William E. Hellerstein, Legal Aid Soc., New York City, for petitioner; Jonathan M. Kratter, Judith Preble, of counsel.

Mario Merola, Dist. Atty., Bronx County, Bronx, N.Y., for respondent; Stuart L. Sanders, Asst. Dist. Atty., of counsel.

## BACKGROUND

SPRIZZO, District Judge:

Petitioner Robert White has made application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On October 2, 1980, following a jury trial in the Supreme Court of the State of New York, Bronx County (Reilly, J.), petitioner, along with co-defendants Samuel Harrington and Darryl Henderson, was convicted of rape in the first degree (New York Penal Law § 130.35) and sodomy in the first degree (New York Pe-

nal Law § 130.50). The complainant victim was a twelve-year-old girl at the time these crimes were committed. White was sentenced to concurrent, indeterminate terms of imprisonment of not less than four years nor more than twelve years on those counts.

On November 19, 1981, the Appellate Division of the Supreme Court of the State of New York (First Department) affirmed White's convictions without opinion. *See People v. White*, 84 A.D.2d 970, 447 N.Y. S.2d 571 (1st Dept.1981).[1] On January 6, 1982, petitioner was denied leave to appeal the affirmance of his convictions to the New York Court of Appeals. *See People v. White*, 55 N.Y.2d 884, 448 N.Y.S.2d 1034, 433 N.E.2d 545 (1982).

The instant petition for a writ of habeas corpus was referred to a magistrate for report and recommendation ("Mag. R."). After receipt of petitioner's objections ("Pet. Obj.") to that report and recommendation, the Court has considered the petition *de novo* and heard argument on the issues raised by counsel for the parties. *See* 28 U.S.C. § 636(b) (1984).

## DISCUSSION

Petitioner makes three general claims in this petition: (1) that the trial court's refusal to release to defense counsel a psychiat-

ric report about complainant Sali Williams deprived him of his constitutional rights to due process and confrontation; (2) that the state court's refusal to compel a grant of immunity to Dennis Louis deprived him of his rights to compulsory process and due process; and (3) that the trial court's refusal to set aside the jury's verdict based upon petitioner's claim of "newly discovered evidence" deprived him of due process. Each of these claims will be treated separately.

## I. *The Psychiatric Report*

The major prosecution witness at petitioner's trial was complainant Sali Williams, who testified that on February 25, 1980 she was raped and sodomized by the three defendants. Complainant testified that her boyfriend, Dennis Louis, stood by and watched, without participating and without coming to her assistance, while the three co-defendants held her down and committed the various criminal acts of which they were convicted.

■ Petitioner complains that he was denied his federal constitutional rights of confrontation and due process by the trial court's decision not to permit the defense attorneys to examine a psychiatric report detailing Ms. Williams' condition a short time before the rape incident.[2] The report,

---

1. In his brief to the Appellate Division, counsel for petitioner argued, in addition to the three general claims set forth in the instant petition, that proof of White's guilt was insufficient under the Fourteenth Amendment. This argument, that proof of White's guilt was insufficient to support his conviction, does not appear to have been specifically raised in the papers submitted in connection with the instant petition. However, were such a claim properly raised here, in light of all the evidence adduced at trial, including complainant's testimony and that of witnesses who corroborated her testimony in several respects, as well as the medical and scientific testimony and physical evidence—all of which were considered by the jury—the Court would agree with the state trial judge, *see* Trial Transcript, 7/30/80, at 21; Sentencing Transcript, 10/2/80, at 10, that the guilt of all three defendants was proven beyond a reasonable doubt by overwhelming evidence. *Cf. Mapp v. Warden*, 531 F.2d 1167, 1174 n. 8 (2d Cir.), *cert. denied*, 429 U.S. 982, 97 S.Ct. 498, 50 L.Ed.2d 592 (1976); *see also* Magistrate's Report

("Mag. R") at 2 (abundance of witness and expert testimony to support guilty verdict). Viewing this evidence in any light, any rational trier of fact could have found the essential elements of the crimes of which White was convicted beyond a reasonable doubt. *See, e.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, *reh'g denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *Pilon v. Bordenkircher*, 444 U.S. 1, 2, 100 S.Ct. 7, 8, 62 L.Ed.2d 1 (1979).

2. The Court rejects respondent's contention that the trial judge's conclusion regarding the materiality of the report is a finding of fact which is entitled to a "presumption of correctness" pursuant to 28 U.S.C. § 2254(d). The issue of the materiality of the psychiatric report is obviously a mixed question of law and fact, which "requires the application of legal principles to the historical facts of this case." *See Cuyler v. Sullivan*, 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980); *compare Townsend v. Sain*, 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755, n. 6, 9

which was undated and contained an illegible signature, was prepared at St. Vincent's Hospital in New York City. *See* Ex. 7, ("Ex. 7") to Respondent's Answering Affidavit ("Ans. Aff.").

Before the jury was brought to the courtroom to hear the opening statements, petitioner's attorney informed the trial court that he had asked the prosecutor on the day before trial "to inquire of his complaining witness whether she had any prior mental hospitalization or mental treatment...." *See* Tr. at 10. The Assistant District Attorney replied that the "complainant informed me that shortly before the incident she was having trouble in school and she did visit a counselor or psychiatrist—she is not quite sure—concerning her work in school, and there was one visit and one visit only." *See id.* at 10–11. Trial counsel for petitioner then

requested of the trial court "that that report be obtained and at least your Honor make an *in camera* inspection ... to see whether that material should be made available to us." *See id.* at 11–12. Neither petitioner's trial counsel nor either of the other two defense counsel requested an adjournment at that point, and the trial proceeded. In fact, complainant's testimony was taken that day, and defense counsel were allowed wide latitude in cross-examination.[3]

▪ On the third day of trial, the court announced that it had received and reviewed the psychiatric report, and had not found "anything which is material or probative in the examination for purposes of this trial." *See id.* at 247. No objections or further requests or arguments from defense counsel with respect to the report were forthcoming.[4]

---

L.Ed.2d 770 (1963); *Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397, 445, 97 L.Ed. 469 (1953) (Frankfurter, J. concurring). As such, that ruling falls outside the scope of section 2254(d). *See Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (per curiam). The Court must make an independent examination of the record of the state trial to determine whether petitioner's constitutional claims have any merit. *See, e.g., United States ex rel. Wade v. Jackson,* 256 F.2d 7, 9 (2d Cir.), *cert. denied,* 357 U.S. 908, 78 S.Ct. 1152, 2 L.Ed.2d 1158 (1958).

3. The defense attorneys' cross-examination of complainant included, *inter alia,* the following areas: her disobedience, on the date of the incident, of both her mother's instruction that she not talk to co-defendant Harrington and of her usual curfew on school nights, *see id.* at 76, 136, 154–55; her previous failure to apprise her mother of the rooftop "clubhouse" in which the alleged crimes took place, *see id.* at 137; her delay in informing anyone, including her family, of the rape, with concomitant inquiries as to whether she fabricated her entire story of the assault, *see id.* at 143; whether, instead of being the victim of rape and sodomy, she had actually engaged in sexual relations with Dennis Louis, who had been Sali's boyfriend and with whom she had had at least one previous sexual encounter, *see id.* at 144; that she had smoked marijuana in the rooftop clubhouse with her sister and another girl, *see id.* at 144–46; that she had been kept out of school because of problems with her teacher just prior to the date of the incident, *see id.* at 146–47; the nature and extent of her conversations with the prosecutor with respect to the case, *see id.* at 156–57;

whether she had ever dated Darryl Henderson, *see id.* at 158; and various and sundry prior inconsistent statements, *see e.g., id.* at 96–99, 104, 119–20, 132. Indeed, the only objection to the defense's cross-examination which was sustained related to the subject of whether pupils besides complainant had been absent from school "because of [trouble with] this teacher." *See id.* at 147.

4. Respondent urges that defense counsel's failure to further object at this juncture of the trial "was not a mere failure to preserve the question as one of law for the state court [of] appeals, but a complete waiver and nullification of the point since it thereby became obvious that the trial court's discretionary determination was satisfactory to counsel who had, after all, asked the court to make that determination." *See* Resp. Mem. at 15. Respondent further urges that "[t]his Court should therefore recognize, that there was an independent state ground for rejecting petitioner's claim in the state courts, of such magnitude that it can be assumed to have been at the heart of the state court's action in affirming appellant's conviction, even though no opinion was written." *See id.*

Respondent's contentions to this effect are without merit. Where, as here, the State has not relied upon a state procedural bar to review in the Appellate Division, which affirms without opinion, the Court will not "guard [ ]state procedural rules more vigilantly than the State itself does." *See Johnson v. Fogg,* 653 F.2d 750, 752 (2d Cir.1981), *cert. denied,* 456 U.S. 907, 102 S.Ct. 1755, 72 L.Ed.2d 164 (1982) (quoting *Washington v. Harris,* 650 F.2d 447, 452 (2d

## A. *The Alleged Sixth Amendment Violation*

■ In support of his contention that the trial court's nondisclosure of the psychiatric report effectively deprived him of his Sixth Amendment rights, petitioner relies on a line of cases wherein trial courts entirely foreclosed defense cross-examination with respect to a crucial aspect of a witness' testimony. *Compare Davis v. Alaska,* 415 U.S. 308, 317–19, 94 S.Ct. 1105, 1110–1111, 39 L.Ed.2d 347 (1974); *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *Greene v. Wainwright,* 634 F.2d 272, 275 (5th Cir.1981). No such preclusion occurred in this case.

Although the report itself was not produced, counsel were aware of the witness' psychiatric history and her school problems. The trial court never foreclosed an inquiry into either area, and the record reflects that counsel freely cross-examined into various aspects of the witness' family and school life. Thus, rather than being a case where the trial court foreclosed inquiry, this case presents a situation wherein counsel, for whatever strategic reasons, chose not to inquire more specifically about the witness' psychiatric history.

Had such an inquiry been made, and had the witness denied visiting a psychiatrist or failed to admit the true nature of her psychiatric problems, counsel would have been able to demonstrate to the trial judge the need to produce the report in order to impeach the truthfulness of that testimony, and the report would, in all likelihood, have been produced. On the other hand, had the witness admitted the psychiatric history as reflected in the report, the report would have been clearly cumulative since the jury would have been aware of the true extent of her psychiatric history. It appears clear, therefore, that the alleged constitutional deprivation complained of was not so much the result of the trial court's restriction on the right of cross-examination as it was the result of counsel's failure to lay an appropriate foundation for the report's production or to provide an adequate factual predicate for both the trial judge, and, indeed, this Court, to assess the constitutional significance of its non-production.

In light of that failure, and the significant amount of evidence already available for impeachment, the trial court did not deprive petitioner of his constitutional rights in not ordering the report produced. *See United States v. Pacelli,* 521 F.2d 135, 137, 140–41 (2d Cir.1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 97 L.Ed.2d 314 (1976); *United States v. Green,* 523 F.2d 229, 237 (2d Cir.1975), *cert. denied,* 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976).

This is especially true since the report itself contained no information which would have had any material impact upon Ms. Williams' credibility. The report noted that complainant had been referred to St. Vincent's Hospital because of suicidal ideation and truancy, *see* Ex. 7 at 2, and further noted that she had complained of various forms of harassment, verbal abuse, and pressure from her teacher, mother, sister, and boyfriend. *See id.* at 2–3. The

Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982)).

In the instant case, petitioner raised the substantive constitutional issue(s) arising from the trial judge's decision regarding the psychiatric report at the state appellate level. *See* Ex. 1 to Respondent's Answering Affidavit ("Ans. Aff.") (Brief of Defendant-Appellant White in *People v. White*), at 21–24. Respondent never raised the procedural ground it now seeks to assert. Thus, no adequate and independent state ground for the procedural bar can exist in this situation. *See Johnson, supra,* 653 F.2d at 752; *Washington supra,* 650 F.2d at 452; *compare Taylor v. Harris,* 640 F.2d 1, 2 (2d Cir.), *cert. denied,* 452 U.S. 942, 101 S.Ct. 3089, 69 L.Ed.2d 958 (1981).

Finally, under New York's Criminal Procedure Law ("CPL") § 470.05(2) (McKinney 1983), an issue is preserved for appellate review as a question of law when a ruling is requested; no exception or protest need be taken subsequent to the ruling. Thus, absent some indication that the petitioner affirmatively consented to the trial court's ruling, petitioner's simple failure to except to the trial court's ruling with respect to the psychiatric report cannot constitute a waiver. *Compare People v. White,* 53 N.Y.2d 721, 723, 439 N.Y.S.2d 333, 334–35, 421 N.E.2d 825, 826–27 (1981).

report, which was undated[5] and unsubscribed, contains no indication that complainant suffered from psychoses, schizophrenia, or hallucinations. In fact, the report states that "[s]he denies any hallucinations or delusions," and there is no indication in the report that she was not capable of accurately perceiving and communicating her experiences and feelings. *See id.* at 2–4.

Moreover, although the report related her troubles at school and at home, as well as the child's self-described struggles between her good and "wild and crazy" sides, *see id.* at 2–3, the examiner found "no gross disturbance in thought process," *see id.* at 3, and diagnosed her condition as an "[a]djustment [r]eaction of [a]dolescence [with] depression." *See id.* at 4. Nothing in the report indicates a propensity for deceit, untruthfulness or falsification.

It follows that petitioner's confrontation rights were not violated by the trial judge's denial of access to the psychiatric report. Indeed, as noted, many of the matters referred to in the report were elicited on cross-examination. *Cf. Pacelli, supra,* 521 F.2d at 137–40. Thus, at the trial, defense counsel attempted to discredit complainant's testimony by means of searching inquiries into, *inter alia,* aspects of her problems in school, her discontent with her family situation, her prior sexual behavior and its role in her relationship with Dennis Louis, and her marijuana usage. *Accord,* Mag.R. at 5–6; *see* note 3 *supra.*[6]

■ In this regard, it is significant to note that while probative evidence casting doubt on a witness' mental stability at the time of the incident about which he testifies may, of course, be used to discredit him, *see United States v. McFarland,* 371 F.2d 701, 705 (2d Cir.1966), *cert. denied,* 387 U.S. 906, 87 S.Ct. 1689, 18 L.Ed.2d 624 (1967); *see also United States v. Hiss,* 88 F.Supp. 559 (S.D.N.Y.1950), not all psychiatric reports about prosecution witnesses are sufficiently probative to require disclosure and/or free use in cross-examination. *Cf. United States v. Brumbaugh,* 471 F.2d 1128, 1129 (6th Cir.) (per curiam), *cert. denied,* 412 U.S. 918, 93 S.Ct. 2732, 37 L.Ed.2d 144, *reh'g denied,* 414 U.S. 1033, 94 S.Ct. 465, 38 L.Ed.2d 326 (1973); *United States ex rel. Polhill v. Otis,* 316 F.Supp. 334, 336 (S.D.N.Y.1970). Certainly, the failure to produce a psychiatric report does not in itself effect a constitutional deprivation where, as here, the report does not contain evidence of any deep or sustained mental problems which would directly bear upon the credibility of the witness. In this respect, the cases relied on by petitioner are legally and factually inapposite. *Compare United States v. Lindstrom,* 698 F.2d 1154, 1160–66 (11th Cir.1983); *United States v. Partin,* 493 F.2d 750, 763–64 (5th Cir.1974), *cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977).

Given that the connection between the information contained in the report at issue and the witness' propensity to tell the truth is attenuated at best, *cf. United States v. Rabinowitz,* 578 F.2d 910, 912 (2d Cir. 1978), such information was not required to be disclosed absent a sufficient showing of relevance by defendant, which petitioner's

---

5. The report described Sali Williams as a "12 yr. old black adolescent girl," with a "DOB" [date of birth] of March 17, 1967. Thus, the parties and this Court might fairly conclude that the report was prepared some time in February of 1980.

6. As noted above, *see* note 3 *supra,* in testing complainant's credibility, defense counsel were properly curtailed by the trial judge with respect to only a single issue—whether pupils other than complainant had been kept out of school because of problems with her teacher. *See* Tr. at 147. It is clear that even without benefit of the report, the defense was "able to reveal significant aspects of [complainant's] character

and motive to fabricate." *See* Petitioner's Memorandum of Law ("Pet. Memo") at 22.

Under these circumstances, allowing defense counsel access to the report and to reopen complainant's cross-examination based upon that report would at best have added cumulative evidence to defendants' impeachment theories. In light of the two days of evidence already before the jury, most of it provided by and concerning the complainant, the trial judge acted properly and within his discretion in denying defense access to the report. *Cf. Davis, supra,* 415 U.S. at 316, 94 S.Ct. at 1110; *Pacelli, supra,* 521 F.2d at 137–41.

trial counsel failed to make. *Cf. United States v. Lopez*, 611 F.2d 44, 45–47 (4th Cir.1979); *United States v. Brown*, 479 F.Supp. 1247, 1253, 1255–56 (D.Md.1979). Indeed, taking into consideration the broad discretion accorded to trial judges in such matters, the decision of the trial court not to order the report produced might not have been error reversible on direct appeal. *Cf. United States v. Glover*, 588 F.2d 876, 878 (2d Cir.1978) (per curiam). It follows that it is not sufficient to entitle petitioner to habeas corpus relief.

In sum, petitioner's trial simply does not present a case wherein "[t]he trial court cut off *in limine* all inquiry on a subject with respect to which the defense was entitled to a reasonable cross-examination." *See Alford, supra*, 282 U.S. at 694, 51 S.Ct. at 220; *cf. Davis, supra*, 415 U.S. at 317–18, 94 S.Ct. at 1110; *Greene, supra*, 634 F.2d at 275. In view of the nature of this report, and the extensive cross-examination afforded, it appears that there was no constitutional error in the trial court's failure to produce the report. *Cf. Pacelli, supra*, 521 F.2d at 137–41.

## B. *The Alleged Due Process Violation*

Petitioner's claim of an alleged violation of due process because of the non-production of the report stands in no better posture. First, that argument assumes that it was constitutional error for the trial judge to deny petitioner access to the report. However, as noted above, it is not entirely clear that the nature of the report was such as to require its production, especially in view of the failure of trial counsel to lay an adequate foundation for its production. As such, it may not even have been subject

to challenge on direct appeal, *see Glover, supra*, 588 F.2d at 878, much less a constitutional deprivation which would entitle petitioner to collateral relief by means of habeas corpus. *Cf. Volpicelli v. Salamack*, 447 F.Supp. 652, 663 (S.D.N.Y.), *aff'd*, 578 F.2d 1372 (2d Cir.1978).

Moreover, even assuming arguendo that the report should have been produced, it does not follow that petitioner's due process rights were violated by its non-production. The Second Circuit's standard in cases where production of specifically requested documents has been denied is whether there is a reasonable likelihood that the outcome of the trial would have been affected had the report been produced. *Cf. Ostrer v. United States*, 577 F.2d 782, 786 (2d Cir.1978) (citing *United States v. Agurs*, 427 U.S. 97, 103–04, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1018, 59 L.Ed.2d 73 (1979).[7] Petitioner has failed to meet that standard. The psychiatric report related, in large part, to many of the same areas already explored by counsel thoroughly and searchingly on cross-examination. Therefore, at best the report would have afforded merely an additional basis to impeach a witness whose credibility had been already substantially attacked. *Accord*, Tr. at 392–430 *passim* (closing statements of defense counsel).

Furthermore, there was ample other evidence in the record which corroborated the testimony of the complaining witness. There is, therefore, no reasonable likelihood that the result would have been different had counsel been permitted access to that additional information. *Cf. Ostrer, supra*, 577 F.2d at 786.[8] Finally, as has

---

**7.** There is little question that the prosecutor acted properly in following the suggestion of the Supreme Court by "submitting the problem to the trial judge." *See Agurs, supra*, 427 U.S. at 106, 96 S.Ct. at 2399.

**8.** This conclusion is buttressed by the recent decision of *United States v. Srulowitz*, 785 F.2d 382 (2d Cir.1986), in which the Second Circuit further explained the standards of materiality outlined by the Supreme Court in *Agurs* and in

*United States v. Bagley*, —— U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985):

In *Bagley*, the Supreme Court further defined the materiality standard and dispelled a suggestion lurking in *Agurs* that the concept of materiality might differ depending on whether the defendant had made a specific request for the undisclosed evidence, or a general request for exculpatory evidence, or no request at all. Drawing on the notion of materiality developed in *Strickland v. Washington*, [466 U.S. 668] 104 S.Ct. 2052 [80

been noted above, petitioner's trial counsel could have elicited that same information by cross-examination since he was aware of the witness' psychiatric history. *See* Part I.A., *supra.*

Given all of these circumstances, the Court concludes that petitioner's due process rights were not violated by the non-production of the psychiatric report. The cases relied on by petitioner are legally and factually inapposite. *Compare Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).[9]

## II. The Testimony of Dennis Louis

### A. The Trial Court's Refusal to Grant Immunity

■ Petitioner contends that his constitutional rights to due process and compulsory process were violated by the trial court's refusal to grant immunity to Dennis Louis. *See* Pet. Memo at 31–40. The Court rejects petitioner's contentions, for the reasons stated below.

Complainant testified that petitioner and his two co-defendants participated in the crimes on the roof, while her boyfriend, Dennis Louis, stood by and observed. *See generally,* Tr. at 33, 41–145 *passim.* After

refusing to comply with the requests of defense counsel to interview him during the course of the trial, Louis was called to the stand and refused to testify, invoking his privilege against self-incrimination. *See* Tr. at 323–36. The trial court denied a request by petitioner's trial counsel that it "require the District Attorney to grant Dennis [Louis] immunity," *see* Pet. Memo at 17; Tr. at 316–17, 321–22, 346–53.[10]

It is well-established in this Circuit that the Compulsory Process Clause of the Sixth Amendment "does not support a claim for defense witness immunity." *See United States v. Turkish,* 623 F.2d 769, 773–74 (2d Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). The Court notes petitioner's acknowledgment of this principle. *See* Pet. Memo at 33, n. 9.

This Circuit has also held that the exercise of the statutory right of a New York prosecutor to refuse to grant immunity to a witness generally does not violate any federal due process requirement. *See Grochulski v. Henderson,* 637 F.2d 50, 52–53 (2d Cir.1980), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1383, 67 L.Ed.2d 358 (1981); *see also Turkish, supra,* 623 F.2d at 778. Petitioner has made no persuasive attempt to distinguish either of these cases, which are dispositive of petitioner's claims.[11]

L.Ed.2d 674] (1984), which considered whether a new trial must be granted because evidence had not been introduced on account of the incompetence of counsel, the *Bagley* Court ruled that whether or not any request for exculpatory material had been made, undisclosed "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." 105 S.Ct. at 3384 (opinion of Blackmun, J.); *id.* at 3385 (opinion of White, J.). Justice Blackmun's opinion noted that *Strickland* had defined "reasonable probability" as " 'a probability sufficient to undermine confidence in the outcome' " of the case. *Id.* at 3383 (quoting *Strickland,* 104 S.Ct. at 2068).
*Srulowitz, supra,* 785 F.2d at 388.

9. *Giglio* involved the prosecutor's non-disclosure of a leniency agreement with the key prosecution witness. *See Giglio, supra,* 405 U.S. at 153–55, 92 S.Ct. at 765–66. *Brady* involved the prosecutor's deliberate suppression of an extra-judicial statement in which petitioner's co-de-

fendant admitted the homicide of which petitioner had been convicted. *See Brady, supra,* 373 U.S. at 84, 83 S.Ct. at 1195.

10. Contrary to petitioner's assertion, *see* Pet. Memo at 17, the trial court did not give only one reason for that denial. In addition to mentioning that the defense had failed to establish that Louis' testimony would be exculpatory, *see* Tr. at 351, a fair reading of the transcript indicates that the trial judge had previously indicated that immunity was a statutory grant, and that Louis was still susceptible to indictment on the charges upon which petitioner and his co-defendants were then being tried. *See id.* at 92–95, 317–22.

11. The case of *Government of the Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir.1980), heavily relied upon by petitioner here, is clearly inapposite. *Smith* is a case which involved "bizarre" facts, *see Turkish, supra,* 623 F.2d at 773, and the facts in *Smith* in no way resemble those in the case at bar. In *Smith,* in addition to a clear

Moreover, at the time of trial, the applicable five-year statute of limitations, *see* CPL § 30.10(2)(b) (McKinney 1981), had not yet run, thus belying petitioner's premise that "a grant of immunity to Dennis [Louis] could not conceivably have affected any present or future prosecution [of Louis]." *See* Pet. Memo at 34. Indeed, it is clear that, almost from the outset of the trial, all the parties and the trial judge were aware of Louis' possible criminal liability. *See, e.g.,* Tr. at 92–95.

Furthermore, at the time when the trial judge denied defense counsel's request for immunity, it was not at all clear that Louis, who had previously refused to cooperate with either defense counsel or the prosecutor, could or would have provided testimony at trial that was clearly "material, exculpatory, and not cumulative." *Cf. Turkish, supra,* 623 F.2d at 778. Thus, contrary to petitioner's assertions, *see* Pet. Memo at 37, Louis's purported post-verdict statement (discussed *infra* at Part II.B. of this Opinion) does not establish that *at trial* Louis would have testified that no rape occurred. *Compare Turkish, supra,* 623 F.2d at 778.[12]

In sum, at best petitioner's claim is one of general "fairness" that does not rise to the level of a due process violation. *See Grochulski, supra,* 637 F.2d at 56. The Court must consider that claim in the light of the Second Circuit's wariness about interfering with the decision of a New York prosecutor, *see id.* at 52–53; *Turkish, supra,* 623 F.2d at 778, whose express request is required under New York law before a court can grant full transactional immunity. *See* CPL § 50.30 (McKinney 1981). It is clear, therefore, that the immunity claim was properly rejected by the trial court, *see People v. Adams,* 53 N.Y.2d 241, 247, 440 N.Y.S.2d 902, 904, 423 N.E.2d 379, 381 (1981), and does not provide a basis for habeas corpus relief. *Cf. Grochulski, supra; Turkish, supra.*[13]

## B. The Trial Court's Denial of Petitioner's "Newly Discovered Evidence" Motion

■ Petitioner contends that the trial court's denial of his motion for a new trial based upon newly discovered evidence deprived him of due process. That claim lacks merit and must be denied. By writ-

indication that the witness would give exculpatory testimony, the local juvenile authorities' previous offer of a grant of immunity was thwarted by an unexplained failure to consent to such a grant by the United States Attorney, who lacked jurisdiction to prosecute that witness. *See Smith, supra,* 615 F.2d at 974; *see also Turkish, supra,* 623 F.2d at 777.

Thus, given these unique circumstances, and in the absence of a strong prosecutorial interest to the contrary, the Third Circuit found that immunity should be granted to the witness who, though suspected of involvement in a crime, *see Smith, supra,* 615 F.2d at 966–67, would not have been subject to prosecution. *See id.* at 974. It is clear that *Smith,* which did not arise in the context of a collateral attack upon a non-federal conviction, is legally and factually inapposite to this case. *See Grochulski, supra,* 637 F.2d at 52.

12. Petitioner's further conclusion, that "coming from a disinterested third party, Louis' testimony [that no rape occurred] would have had a markedly different impact on the jury than that of Sam Harrington, the co-defendant who testified [that no rape occurred]," *see* Pet. Memo at 38, is not persuasive. Since petitioner failed to

demonstrate that Louis would be a voluntary witness at a retrial, the only manner in which Louis' testimony could have been compelled would have been via a grant of immunity from prosecution, not as a "disinterested third party" witness. Moreover, Louis was a friend of petitioner, and his testimony would have been subject to impeachment on that ground as well.

13. Dennis Louis was clearly an "actual or potential target of prosecution." *See Grochulski, supra,* 637 F.2d at 52–53 (quoting *Turkish, supra,* 623 F.2d at 778). There was uncontradicted testimony from several sources that Louis was present at the scene of the crime during the incident, and that he remained with the complainant for some time after the alleged incident. Thus, an affidavit detailing the "prosecutor's suspicions of the witness' criminal activity," *see id.,* would clearly have been superfluous in this case, unless of course the prosecutor had wished to bring to the trial court's attention the fact that on the morning after the alleged incident, petitioner himself implicated Louis in the rape of the complainant in a stenographically recorded interview with an Assistant District Attorney. *See* Ex. 9 to Ans. Aff.

ten, presentence motion, attorneys for petitioner argued to the trial court that pursuant to CPL §§ 330.30, 330.40, and 330.50, a new trial should be ordered. *See* Ex. 8 to Ans. Aff. In that motion, petitioner alleged, *inter alia,* that on September 9, 1980, more than one month after the jury had rendered its guilty verdicts on July 30, 1980, Louis "voluntarily met with ... counsel for Samuel Harrington, and ... an associate of defense counsel for the [petitioner]...." *See id.* at 7. Counsel for petitioner alleged that "[a]t that time, Mr. Louis [14] indicated that he was present on the night of the alleged incident and that none of the defendants had sexual intercourse, of any sort, with [complainant], thus corroborating [the testimony of] the one defense witness, [Samuel Harrington]." *See id.*

In an opinion filed October 17, 1980, the trial judge denied petitioner's motion. *See* Ex. 10 to Ans. Aff. That ruling was correct for several reasons. First, petitioner's papers on this "newly discovered evidence motion" (and, indeed, here in this habeas proceeding) contained no affidavit executed by Louis, no statement by Louis that he would be willing to testify at a new trial, and no statement by Louis giving any specific details regarding his observations of the actions of the people at the scene of the alleged crime.[15] That showing was manifestly insufficient to entitle petitioner to a new trial.

Petitions for habeas corpus based upon newly discovered evidence should only be granted in rare instances, and here, where the evidence could have been discovered with due diligence prior to trial, where it is merely cumulative, and where the admission of the evidence would probably not lead to an acquittal, *cf. Srulowitz, supra* note 8, habeas relief is not warranted. *See De Martino v. Weidenburner,* 616 F.2d 708, 711 (3d Cir.1980); (*citing Townsend v. Sain,* 372 U.S. 293, 311, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963)); *cf. Mapp v. Clement,* 451 F.Supp. 505, 511 (S.D.N.Y.); *aff'd without opinion,* 591 F.2d 1330 (2d Cir.1978); *cert. denied,* 440 U.S. 948, 99 S.Ct. 1428, 59 L.Ed.2d 637 (1979).

The "newly discovered evidence" in this case was not in fact "newly discovered," as the discussion about the need for immunizing Louis at the trial demonstrates. Even assuming arguendo that the so-called newly discovered evidence was in fact newly discovered, it was not even clear from the motion for a new trial that Louis would in fact be a witness at a new trial. Indeed, that prospect was highly unlikely, given Louis' own self-incrimination problems and the prosecutor's understandable reluctance to afford him statutory immunity.

In sum, this is, therefore, not a case in which perjury was knowingly introduced or

---

**14.** From the outset of this case in state court, it appears from the papers submitted to this Court that Dennis Louis has also been referred to as "Dennis Lewis." For the sake of convenience and consistency the Court has referred to him as "Dennis Louis," and will continue to do so.

**15.** Petitioner's § 330.30 (1) motion was denied, apparently "[b]ased upon the totality of the evidence, and this Court's prior rulings...." *See* Ex. 10 to Ans. Aff. at 1. Thus, it appears that the trial judge properly considered and decided the motion for a new trial on the merits, and did not deny the motion on procedural grounds. *Cf. Smart v. Scully,* 787 F.2d 816, 819–20 (2d Cir.1986) (trial court's denial of defendant's motion because motion did not contain sworn statements did not rise to the level of procedural default as enunciated in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).

With respect to this motion, the parties never addressed any such arguments in their state appellate papers, and there is no indication in the orders of the Appellate Division and Court of Appeals that those courts relied on procedural grounds in affirming petitioner's conviction. In such a situation, "usually there is no adequate and independent state ground upon which the state judgment rests, and there is no reason to preclude review of the federal claim." *See Matthews v. Scully,* 579 F.Supp. 1, 6 (S.D.N.Y. 1984) (citing *Martinez v. Harris,* 675 F.2d 51, 54 (2d Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97, *reh'g denied,* 459 U.S. 1024, 103 S.Ct. 392, 74 L.Ed.2d 521 (1982)). Therefore, this Court has reviewed the merits of petitioner's constitutional claim allegedly arising from the trial court's denial of his motion for a new trial. *Accord, Jackson v. Scully,* 781 F.2d 291, 295 n. 2 (2d Cir.1986).

tolerated, *cf. Giglio, supra,* 405 U.S. at 152–55, 92 S.Ct. at 765, or in which exculpatory evidence within a prosecutor's control and/or possession was requested and withheld. *Cf. Brady, supra,* 373 U.S. at 87, 83 S.Ct. at 1196. It follows that the state court's determination that a new trial was not required should not be disturbed by this Court on habeas corpus review. *Cf. United States v. Gilbert,* 668 F.2d 94, 96 (2d Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982); *United States v. Alessi,* 638 F.2d 466, 479 (2d Cir.1980); *United States v. Sherr,* 533 F.Supp. 728, 735 (S.D.N.Y.) *aff'd without opinion,* 697 F.2d 300 (2d Cir.1982).

This is especially true since, as the trial court properly concluded, petitioner's motion papers did not even provide an adequate basis for assessing whether Louis' purported post-verdict exculpatory statement was more than merely cumulative to co-defendant Harrington's denial of the crime at trial, and whether that statement offered more than a mere impeachment of complainant's testimony, *cf. People v. Bartholomew,* 73 Misc.2d 541, 547, 342 N.Y. S.2d 798, 805 (Nassau Cty. Ct., Special Term, 1973), and whether that statement created a possibility of a result more favorable to the defendants. *See* Ex. 10 to Ans. Aff. at 1–2 (citing *People v. Williams,* 35 A.D.2d 1023, 316 N.Y.S.2d 473 (1970). Evidence merely relevant to the guilt or innocence of an accused is not sufficient to afford relief by way of habeas corpus. *Cf. Mapp, supra,* 451 F.Supp. at 511 (quoting *Townsend v. Sain, supra,* 372 U.S. at 317, 83 S.Ct. at 759).

## CONCLUSION

For all the foregoing reasons, the above-captioned petition for a writ of habeas corpus must be dismissed. The Clerk of the Court shall enter judgment for the respondent accordingly.

It is SO ORDERED.